UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

CEREUS PRODUCT DEVELOPMENT,
INC.,

                 *Plaintiff,*

      -*against*-

BOOM LLC, BOOM! CREATIVE
DEVELOPMENT, LLC, NEW SUNRISE
BEAUTY STUDIO, LLC, and ARTHUR
DeGAETANO,

            *Defendants.*

------------------------------------------------------------X

14 Civ. 4292 (PAC)

**OPINION & ORDER**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6-5-15

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Cereus Product Development, Inc. ("Cereus" or "Plaintiff") brings this suit against its competitor Boom LLC, Boom! Creative Development, LLC, New Sunrise Beauty Studio, LLC, and Arthur DeGaetano (collectively, "Defendants") for breach of contract, fraudulent inducement, fraud, tortious interference with prospective economic relations, misappropriation of confidential information and trade secrets, unjust enrichment, and the imposition of a constructive trust arising out of the parties' failed acquisition discussions in 2012. Defendants now move to dismiss the complaint in its entirety. For the following reasons, the motion is granted in part and denied in part.

1

## BACKGROUND[1]

Cereus, a full-service turnkey supplier to the fragrance and beauty industries, had a long term, successful, and profitable relationship with Aéropostale, Inc. ("Aero"). Compl. ¶¶ 2-3, 28. Cereus's competitor, Boom, approached it with a proposed offer to buy, but this offer was spurious—Defendants' true intention was to use information gained in the acquisition process to oust Cereus from its long term relationship with Aero, its largest customer. *Id.* ¶¶ 2-3, 114-17.

William D. Rosenbaum founded Cereus in 2005. *Id.* ¶¶ 12, 28. Cereus "develops, creates, and oversees the production of private fragrance labels for prominent national retailers." *Id.* ¶ 29. Beginning in 2005, Cereus served as Aero's sole supplier. *Id.* ¶ 31. Two of Aero's most popular fragrances are products which Cereus launched for Aero in 2007. *Id.* ¶ 34.

In 2006, after earlier speaking with an individual at Boom who inquired about the scope of Plaintiff's business, Rosenbaum received a call from Anthony DeGaetano, the President and Chief Executive Officer of Boom. *Id.* ¶¶ 8-9, 35-37. During this call, DeGaetano offered Boom's creative and financial support to Cereus, which Rosenbaum rejected. *Id.* ¶¶ 37-38. Cereus continued to flourish as Aero's turnkey supplier, launched ten new labels, developed specialty and holiday gift items, and expanded Aero fragrance lines to international borders. *Id.* ¶ 39.

---

[1] The Court notes that it has not considered the unsworn factual allegations made in Defendants' brief. Def. Mem. at 4-7. The facts herein are taken from Plaintiff's Complaint. The Court also takes judicial notice of the relevant contract between the parties, *see* Muldrew Decl. Ex. 1, as it is incorporated into the complaint by reference and integral to the complaint. *Garanti Finansal Kiralama A.S. v. Aqua Marine and Trading Inc.*, 697 F.3d 59, 64 n.4 (2d Cir. 2012).

In or around June 2012, a representative for DeGaetano contacted Rosenbaum regarding DeGaetano's interest in acquiring Cereus. *Id.* ¶ 40. Rosenbaum had not been offering Cereus as an acquisition target prior to this call. *Id.* ¶ 41. Rosenbaum met with DeGaetano that month in Manhattan. DeGaetano reiterated his intent to expand and informed Rosenbaum that Boom had recently purchased New Sunrise,[2] thereby securing the American Eagle Outfitter turnkey account. *Id.* ¶ 43. DeGaetano "stated that Defendants now supplied two of the 'three A's'— American Eagle and Abercrombie & Fitch—but wanted to add the final and elusive 'A', *i.e.* Plaintiff's Aero account." *Id.* ¶ 44. DeGaetano told Rosenbaum that Boom would like to purchase a 100% controlling equity interest in Cereus and offered to acquire it at between three and four times Cereus's "earnings before interest, taxes, depreciation, and amortization", or "EBITDA." *Id.* ¶ 45.

At the conclusion of the meeting, Rosenbaum agreed to retain transactional counsel and compile due diligence materials that would be required for a transaction. *Id.* ¶ 46. DeGaetano confirmed interest in the transaction in October 2012 after receiving a valuation for 100% of Cereus's equity. *Id.* ¶ 47. Defendants presented Rosenbaum with a draft mutual confidentiality agreement on Boom letterhead, and Rosenbaum added various sections in bold providing non-solicitation and non-competition clauses, upon the advice of counsel. *Id.* ¶ 48. Rosenbaum and Boom entered into a final Mutual Confidentiality Agreement ("MCA") on October 17, 2012; Rosenbaum signed as Plaintiff's President and DeGaetano signed "in his alleged capacity as Boom CD's President and CEO." *Id.* ¶¶ 49-51.

---

[2] Defendant New Sunrise is now a wholly owned subsidiary or affiliate of Boom LLC. Compl. ¶ 7.

The MCA prohibits the usage of "Confidential Information and Trade Secrets" for any purpose except for the evaluation and development of the proposed transaction and prohibits the disclosure of such information for five years after the date of the agreement. *Id.* ¶ 54. The MCA prohibits solicitation of customers for five years as well. *Id.* ¶ 55. The MCA's definition of Confidential Information and Trade Secrets exempts information "known to the recipient or readily available to the recipient from another source before receipt thereof from the disclosing party." MCA ¶ 3.A, Muldrew Decl. Ex. 1.

Following execution of the MCA, Defendants "denied their obligation to provide Plaintiff with information necessary for Plaintiff to determine whether Defendants were capable of funding the proposed acquisition." Compl. ¶ 57. Instead Defendants required Plaintiff to share their financial information before Defendants would disclose any information. *Id.* ¶ 58. To salvage negotiations, Rosenbaum met with Defendants in November 2012, at which point DeGaetano refused to provide evidence that Defendants could purchase Cereus, but did convey Defendants' yearly gross sales revenue and EBITDA. *Id.* ¶ 60. Rosenbaum then divulged confidential and private information about Cereus, including that Cereus's net sales were equal to 33% of Defendants' sales, but that Cereus had EBITDA equal to nearly 80% of Defendants' EBITDA; that Cereus carried no significant debt; and that Cereus only employed three individuals. *Id.* ¶¶ 61-63.

DeGaetano inquired directly about Cereus's contract with Aero, which Rosenbaum told him was on a year-by-year renewal basis and had been renewed each year since 2005. *Id.* ¶¶ 64-65. Rosenbaum also conveyed "the highly confidential fact" that the Aero account represented approximately 98% of Cereus's yearly revenue. *Id.* ¶ 66.

Defendants were thereby enabled to compute the size and profitability of the Aero account. *Id.* ¶ 67. DeGaetano also used this information to discount the acquisition price of three to four times Cereus's EBITDA in negotiations, claiming that Cereus was less attractive because the Aero contract had a short duration and Cereus was so dependent on Aero. *Id.* ¶ 68. This was disingenuous, because DeGaetano knew that such an arrangement was customary in the industry, and the contract's short term did not impair Cereus's acquisition value. *Id.* ¶ 69. Rosenbaum declined the reduced acquisition proposal a week later, and talks between the two parties terminated in late 2012. *Id.* ¶¶ 70-71.

Cereus continued work on the Aero account, and by June 2013 had concluded development of the 2013 holiday lines, which were then approved by Aero. *Id.* ¶¶ 72-74. For several months, Cereus received positive feedback from Aero on its work and indications from Aero that Cereus's projects for Aero remained on track. *Id.* ¶¶ 72-82. Cereus and Aero arranged to meet in October 2013, but Aero postponed the meeting. *Id.*¶¶ 79-80. Upon Aero's request, Cereus provided renderings and samples in connection with the 2014 back-to-school line, but never received a meeting date with Aero. *Id.* ¶¶ 81-82.

On October 27, 2013, Aero's vice president Jon DiBarto advised Rosenbaum "that development of the back-to-school 2014 launch was on hold, as were all future forecasts." *Id.* ¶ 84. Later, DiBarto informed Rosenbaum that New Sunrise had recently pitched Aero's fragrance account and Aero's management favored their pitch. *Id.* ¶ 85. He also advised that Aero had not initiated the New Sunrise pitch and, according to DiBarto, New Sunrise's chief executive officer had "cold contacted" Aero. *Id.* ¶ 86. The next day, Aero's Director of Fragrance and Beauty, Leigh Genkinger, informed Rosenbaum that New Sunrise had pitched Aero and that Cereus would not receive any Aero purchase orders beyond first quarter 2014 or any forecasts beyond

second quarter 2014. *Id.* ¶¶ 87-88. Cereus then sent a cease-and-desist letter to Defendants "demanding that they refrain from illegally soliciting Aero and comply with the MCA's confidentiality provisions." *Id.* ¶ 89. Following this letter, Aero ceased communication with Cereus, even though Aero was not copied on the letter. *Id.* ¶ 90.

In January 2014, Rosenbaum received a call from Genkinger, who said that Aero was developing a new fragrance with a new supplier, but refused to share the identity of the supplier. *Id.* ¶¶ 91-92. Cereus believes that Defendants are the new supplier. *Id.* ¶ 94. On January 22, 2014, Aero personnel informed Rosenbaum that Cereus would no longer supply the Aero brand at all. *Id.* ¶ 98. Aero also froze a development project which Aero had asked Cereus to initiate. *Id.* ¶ 99. In March 2014, DiBarto informed Rosenbaum that DiBarto "had gotten in trouble with Aero executives because Rosenbaum failed to tell DiBarto that Rosenbaum was actively seeking to sell control of" Cereus, but DiBarto refused to inform Rosenbaum who had passed along such information. *Id.* ¶¶ 100-02.

Cereus alleges that Defendants violated the MCA, solicited Aero, and informed Aero that Rosenbaum was shopping Cereus in order to make Cereus appear less stable as a supplier. *Id.* ¶ 105. Cereus later contacted two of its raw material suppliers who confirmed that they had received calls from New Sunrise regarding New Sunrise's ability to procure Aero fragrances developed by Cereus. *Id.* ¶ 106. Cereus has also spoken with fashion designer Lance McGregor, who was approached by Boom to design labels for clients and who stated that Boom had told him that they were now the turnkey supplier for "the elusive 'Three A's'—American Eagle, Abercrombie, and Aero." *Id.* ¶ 109.

Cereus alleges that DeGaetano knowingly misrepresented material facts in the attempt to acquire Cereus's equity and in signing the MCA and that he never intended to acquire the company or to honor the terms of the MCA. *Id.* ¶¶ 111-15. Defendants advanced the acquisition and the MCA solely to lure Cereus into providing confidential information from which Defendants could glean the size and profitability of the Aero account and the length of the Aero contract in order to steal Aero's business. *Id.* ¶¶ 116-17. Cereus also alleges that Boom Creative Development is a fictitious entity and that Defendants committed fraud by entering into the MCA on behalf of a fictitious entity. *Id.* ¶¶ 127-35.

## DISCUSSION

### I.  Applicable Law

A complaint must "provide the grounds upon which [plaintiff's] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). On a motion to dismiss, the Court "accept[s] all properly pled factual allegations in the complaint as true and draw[s] all reasonable inferences in favor of the plaintiff." *Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 284 (2d Cir. 2013); *accord Twombly*, 550 U.S. at 556. At this stage, the Court does not "assay the weight of the evidence which might be offered in support thereof" but instead "assess[es] the legal feasibility of the complaint." *Lopez v. Jet Blue Airways*, 662 F.3d 593, 596 (2d Cir. 2011) (internal citation and quotation marks omitted).

## II.   Analysis

Defendants' motion to dismiss Plaintiff's claim for breach of contract for failure to state a claim is denied because the allegations regarding the contract and its alleged breach are clearly pleaded. Def. Mem. at 22-25. Defendants' motion to dismiss Plaintiff's claims for fraud, fraudulent inducement, and tortious interference with prospective economic relations is also denied. The allegations are sufficient to raise a claim that defendants' entire approach to Plaintiff was fraudulent, including the offer to buy Cereus. Defendants' motion to dismiss Plaintiff's claim for misappropriation of confidential information and trade secrets is granted because "New York law bars tort claims alleging nothing more than that a defendant breached its duties arising under a written agreement." Def. Mem. at 9-19. Defendants' motion to dismiss Plaintiff's claims for unjust enrichment and constructive trust, on the grounds that "New York law bars quasi-contract theories where the parties' relationship is governed by a detailed and enforceable written agreement," is granted. Def. Mem. at 19-22.

### A.  Breach of Contract

A claim for breach of contract under New York law requires a plaintiff to allege "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (internal citations and quotation marks omitted). Here, Plaintiff has met each one of these requirements.

Defendants argue that Plaintiff has failed to allege claims showing that Defendants breached the MCA by soliciting Aero's business or using Cereus's confidential information. Def. Mem. at 22-25. Specifically, Defendants argue that the MCA only prohibited solicitation of clients whose identities were unknown. *Id.* at 23. This argument is inappropriate at the motion

to dismiss stage.  It may well be that the MCA only prohibited solicitation of clients whose identities were unknown before the signing of the MCA, and that Cereus's relationship with Aero was known to Defendants before signing and was in the public domain; but that is not what the complaint alleges. [3]  At this stage, the claims as alleged in the complaint are taken as true and construed in the light most favorable to Plaintiff.

Similarly, Defendants' contention that they did not receive or use any confidential information or trade secrets of Cereus because the information given was minimal and vague raises another factual argument that the Court cannot determine on a motion to dismiss. Defendants' reliance on *Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co.*, 1 F. Supp. 3d 224, 257-62 (S.D.N.Y. 2014), is misplaced.  Def. Mem. at 24-25.  In that case, the court ruled on summary judgment that Plaintiff's trade secret was too vague and indefinite to deserve protection.  1 F. Supp. 3d at 257-58.  But this is a motion to dismiss and a substantively different standard is applied.

Accordingly, Cereus has adequately alleged all elements of a breach of contract claim, Defendants' arguments to the contrary are rejected, and the motion to dismiss the breach of contract claim is denied.

---

[3] Defendants assert that it is clear from the face of the complaint that Defendants knew of the Aero relationship prior to signing the MCA because Defendants approached Plaintiff for the purposes of "obtain[ing] the final 'A.'" *See* Compl. ¶¶ 44-45; Def. Mem. at 23; Reply at 2.  Drawing reasonable inferences in Plaintiff's favor, the Court does not interpret these allegations to mean that Defendants had firm knowledge of Plaintiff's relationship with Aero such that the Aero relationship was excluded from protection under the MCA.

## B. Tort Claims[4]

### 1. Fraudulent Inducement

A fraudulent inducement claim under New York law requires a plaintiff to allege "(i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the misrepresentation by appellants; and (iv) resulting damages." *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 62 (2d Cir. 2012) (internal citation and quotation marks omitted). Where a fraudulent inducement claim concerns the same facts as a breach of contract claim, the fraud claim is only permissible when it points to "a fraudulent misrepresentation that is collateral or extraneous to the contract." *Le Metier Beauty Inv. Partners LLC v. Metier Tribeca, LLC*, 2015 WL 769573, at *6 (S.D.N.Y. Feb. 24, 2015) (internal citations and quotation marks omitted).

Plaintiff alleges that the MCA, and the path leading to it, were both steps in a larger fraud, and that Defendants used fraudulent means to execute their tortious plan to obtain Aero's business. Defendants' only argument in opposition to Plaintiff's fraudulent inducement claim is that Plaintiff fails to "point to facts that create a duty separate and independent of the [MCA], [o]r a collateral misrepresentation," and therefore the claim is duplicative of the breach of contract claim. Def. Reply at 5. But Plaintiff adequately pleads with specificity that Defendants misrepresented present facts in order to obtain the means necessary to steal Plaintiff's largest customer, and that the contract was merely part of a "larger scheme, the primary purpose of

---

[4] In addition to the claims discussed below, Plaintiff in its brief alleges that Defendants violated "the implied duty of good faith and fair dealing and the common law prohibition against the diversion of goodwill in connection with the sale of a business." Pl. Mem. at 13. Such claims are not included in the complaint, and Plaintiff does not provide any support for this allegation. In addition, the diversion of goodwill prohibition is completely inapplicable here, as it applies to a situation where a seller of a business is expected to permanently refrain from soliciting prior customers. *Hyde Park Prods. Corp. v. Maximilian Lerner Corp.*, 65 N.Y.2d 316, 322 (N.Y. 1985).

which is alleged to be stealing Plaintiff's business account with Aero." Pl. Mem. at 14; Compl.

¶¶ 115-16. "'[A] misrepresentation of present facts is collateral to the contract (though it may

have induced the plaintiff to sign the contract) and therefore involves a separate breach of duty.'"

*Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 183-84 (2d Cir. 2007)

(quoting *First Bank of Ams. v. Motor Car Funding, Inc.*, 182 A.D.2d 971 (N.Y. App. Div. 1st

Dep't 1999)). Here, where Plaintiff has alleged a misrepresentation of fact which induced

entrance into the contract, as well as a larger fraudulent scheme of which the contract was merely

a part, the fraudulent inducement claim is not duplicative of the contract claim and survives

Defendants' motion to dismiss.

### 2.  Fraud

A fraud claim under New York law requires a plaintiff to allege "(1) a material

misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the

defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5)

which caused injury to the plaintiff." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d

395, 402 (2d Cir. 2015). As with fraudulent inducement, a fraud claim brought with a breach of

contract claim must contain allegations that either demonstrate a duty separate and apart from the

duties imposed under the contract, or a fraud collateral or extraneous to the contract. *IOP Cast

Iron Holdings, LLC v. J.H. Whitney Capital Partners, LLC*, 2015 WL 1005961, at *18 (S.D.N.Y.

Mar. 3, 2015) (citing *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20

(2d Cir. 1996)).

Plaintiff alleges that Defendants committed fraud by entering into the contract under the

name Boom CD, which is a fictitious entity; that this constituted a violation of General Business

Law ("GBL") §§ 130 and 349; and that therefore the complaint adequately alleges a fraud

11

separate and apart from the contractual obligations. Pl. Mem. at 16-17.  Plaintiff also alleges a

"concerted attempt by DeGaetano, individually, through fraudulent means, to usurp Plaintiff's

relationship with Aero." Pl. Mem. at 17.  While Defendants argue that the use of the name of a

fictitious entity in the contract was a mere mistake, such a claim cannot be considered by the

Court.  Plaintiff has adequately alleged material misrepresentations which Defendants knew to

be false and upon which Plaintiff reasonably relied.

Defendants' argument that Plaintiff has not alleged damages also fails.  Plaintiff has

clearly alleged damages in the form of the loss of its relationship with Aero and 98% of

Plaintiff's yearly revenue.  Finally, the Court rejects Defendants' argument that Plaintiff's fraud

claim fails to meet the heightened pleading standards of Fed. R. Civ. P. 9(b).  The complaint

clearly conveys what the alleged fraudulent statements are, provides details regarding the context

of the statement, clearly explains why the statements were fraudulent, and provides allegations

leading to the inference that the misstatements were knowingly made.  The complaint

"adequately pleads the particulars of who, what, when and why of a claim for common law

fraud" sufficient to meet Fed. R. Civ. P. 9(b)'s heightened pleading requirement.  *CCM*

*Rochester, Inc. v. Federated Invs., Inc.*, 2014 WL 6674480, at \*3 (S.D.N.Y. Nov. 25, 2014).

Accordingly, Defendants' motion to dismiss Plaintiff's fraud claim is denied.

### 3.  Tortious Interference with Prospective Economic Relations

A claim for tortious interference with prospective economic relations requires a plaintiff

to allege "(1) business relations with a third party; (2) the defendant's interference with those

business relations; (3) that the defendant acted with the sole purpose of harming the plaintiff or

used dishonest, unfair, or improper means,[5] and (4) injury to the relationship." *NYC Mgmt.*

---

[5] The third element of a tortious interference claim is phrased in the disjunctive, but Plaintiff appears to concede that
Defendants did not act for the sole purpose of harming Plaintiff. Pl. Mem. at 17. Even without this concession,

*Grp., Inc. v. Brown-Miller*, 2004 WL 1087784, at *8 (S.D.N.Y. May 14, 2004) (citing *Purgess v. Sharrock*, 33 F.3d 134, 141 (2d Cir. 1994)). "Where there has been no breach of an existing contract, but only interference with prospective contract rights, plaintiff must show more culpable conduct on the part of the defendant." *Devash LLC v. German Am. Capital Corp.*, 959 N.Y.S.2d 10, 15 (N.Y. App. Div. 1st Dep't 2013) (internal citations, quotation marks, and alterations omitted).

Defendants argue that the tortious interference claim is duplicative of the breach of contract claim and fails to allege the use of wrongful means directed at a third party. Def. Mem. at 16-18. But Plaintiff's tortious interference claim is not duplicative for the reasons discussed above—Plaintiff may proceed with tort claims in addition to its breach of contract claim because it has alleged tortious conduct collateral to the contract. Likewise, Defendants' argument regarding Plaintiff's failure to allege actions directed at Aero fails. To state a claim for tortious interference, the interference with a third party "must be direct: the defendant must direct some activities towards the third party and convince the third party not to enter into a business relationship with the plaintiff." *Ritani, LLC v. Aghjayan*, 880 F. Supp. 2d 425, 451-52 (S.D.N.Y. 2012) (internal citations and quotation marks omitted). The complaint clearly alleges that Defendants spoke to Aero, pitched their business based on information improperly gleaned from Plaintiff, and made misleading statements regarding the stability of Plaintiff's business. *See, e.g., Cardiocall, Inc. v. Serling*, 492 F. Supp. 2d 139, 152-53 (E.D.N.Y. 2007) (holding defendant liable for tortious interference for wrongfully using plaintiff's confidential information

---

however, Plaintiff would be unable to demonstrate that Defendants acted for the sole purpose of harming Plaintiff because Defendant had "a 'legitimate economic self-interest' in its putatively interfering conduct." *Enzo Biochem, Inc. v. Molecular Probes, Inc.*, 2013 WL 6987615, at *3 (S.D.N.Y. Dec. 6, 2013) (quoting *Learning Annex Holdings, LLC v. Whitney Educ. Grp., Inc.*, 765 F. Supp. 2d 403, 412 (S.D.N.Y. 2011)).

to obtain plaintiff's clients). These allegations make a plausible claim for tortious interference with business relations, and Defendants' arguments to the contrary are unavailing. Accordingly, Defendants' motion to dismiss the tortious interference claim is denied.

### 4. Misappropriation of Confidential Information and Trade Secrets

A claim for misappropriation of confidential information and trade secrets requires a plaintiff to show "(1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 117 (2d Cir. 2009). But misappropriation claims cannot lie where they are simply a restatement of a breach of contract claim. A misappropriation claim "must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract." *Reed Constr. Data Inc. v. McGraw-Hill Cos., Inc.*, 745 F. Supp. 2d 343, 353 (S.D.N.Y. 2010) (internal citations omitted). Here there is no such showing of extraneous circumstances, and the alleged tortious conduct is expressly addressed by the contract.

Plaintiff relies on *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42 (2d Cir. 2012), but there the Second Circuit identified an independent legal duty arising out of the parties' relationship that does not exist here. Pl. Mem. at 21; *Bayerische*, 692 F.3d at 58-59. And in *Exelis, Inc. v. SRC, Inc.*, 2013 WL 5464706, at *4 (N.D.N.Y. Sept. 30, 2013), the Court allowed the plaintiff's claims to proceed only in the alternative to their breach of contract claim and only where the defendants had failed to oppose the plaintiff's argument. In the instant case, the allegations regarding misappropriation do not spring from circumstances extraneous to the contract, and so the misappropriation claim is dismissed.

14

Plaintiff argues that it is permitted to plead in the alternative pursuant to Fed. R. Civ. P.

8(d)(2) and accordingly its claim should not be dismissed because of the existence of its breach

of contract claim. Pl. Mem. at 13. This argument is unavailing for the misappropriation claim,

because the misappropriation claim is duplicative of the contract claim. Where, as here, a tort

claim "is not cognizable under New York law, the alternative pleading rule offers no solace."

*LCO Destiny, LLC v. Michaels Stores, Inc.*, 543 F. Supp. 2d 129, 133-34 (N.D.N.Y. 2008).

Accordingly, Plaintiff is denied leave to replead the misappropriation claim.

## C. Quasi-Contract Claims

### 1. Unjust Enrichment

A claim for unjust enrichment under New York law requires a plaintiff to show "(1)

defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate

against permitting defendant to retain what plaintiff is seeking to recover." *Ashland Inc. v.

Morgan Stanley & Co., Inc.*, 652 F.3d 333, 339 (2d Cir. 2011) (internal citation and quotation

marks omitted). But "[t]he theory of unjust enrichment lies as a quasi-contract claim. It is an

obligation the law creates in the *absence of any agreement*." *Diesel Props S.r.l. v. Greystone

Business Credit II LLC*, 631 F.3d 42, 54 (2d Cir. 2011) (emphasis added). Indeed, "[i]t is one of

the 'well-settled principles of New York law' that 'the existence of a valid and enforceable

written contract governing a particular subject matter ordinarily precludes recovery in quasi

contract for events arising out of the same subject matter.'" *Grant & Eisenhofer, P.A. v.

Bernstein Liebhard LLP*, 2015 WL 1809001, at *5 (S.D.N.Y. Apr. 20, 2015) (quoting *In re First

Cent. Fin. Corp.*, 377 F.3d 209, 213 (2d Cir. 2004)).[6]

---

[6] The case relied upon by Plaintiff to support the argument that an unjust enrichment claim is not duplicative where
the allegation is that the contract was induced by fraud, Pl. Mem. at 23, cites only to a case where the enforceability

15

Plaintiff urges the Court to allow the unjust enrichment claim to survive because "Defendants seek to have it both ways by simultaneously asserting that the MCA governs the parties' dispute, while denying that the agreement prohibits" Defendants' alleged conduct, and that "[s]hould it be determined that the MCA does not apply, Plaintiff could still recover its losses under a quasi-contract theory of unjust enrichment." Pl. Mem. at 23. But alternative pleadings of unjust enrichment claim are only allowed "[w]here there is a bona fide dispute as to whether a relevant contract exists." *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 471 (S.D.N.Y. 2014). Where, as here, the parties do not dispute the existence or enforceability of the contract but dispute whether the contract applies to a particular client, a dispute which is "rooted in the [MCA] itself," *see Eastern Cont'l Min. & Dev. Ltd. v. Signet Grp. LLC*, 2013 WL 6503526, at *8 (S.D.N.Y. Dec. 9, 2013), the unjust enrichment claim is simply duplicative of the breach of contract claim. *Id.* at 472. Accordingly, the unjust enrichment claim is precluded by the existence of a valid contract and is dismissed.

## 2.    Constructive Trust

The imposition of a constructive trust under New York law requires a plaintiff to allege "(1) a confidential or fiduciary relationship; (2) an express or implied promise; (3) a transfer in reliance on such a promise; and (4) unjust enrichment." *Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc.*, 380 F.3d 624, 646 (2d Cir. 2004). Like the unjust enrichment claim, this claim is precluded by the existence of the contract. "'[W]here a valid agreement controls the rights and obligations of the parties, an adequate remedy at law typically exists,' and a constructive trust should not be imposed." *Northern*

---

of the contract was challenged. *See Rodriguez v. It's Just Lunch, Int'l*, 2013 WL 1749590, at *5 (S.D.N.Y. Apr. 23, 2013) (citing *Pramer S.C.A. v. Abaplus Int'l Corp.*, 907 N.Y.S.2d 154, 161 (N.Y. App. Div. 1st Dep't 2010)).

*Shipping Funds I, LLC v. Icon Capital Corp.*, 921 F. Supp. 2d 94, 107 (S.D.N.Y. 2013) (citing *In re First Cent. Fin. Corp.*, 377 F.3d at 215). Accordingly, the constructive trust claim is dismissed "because th[at] claim[ is] duplicative of the breach of contract claim and because . . . Plaintiff[ has] failed to allege any distinct harm or actions giving rise to any separate claim of . . . constructive trust." *Spanierman Gallery, PSP v. Love*, 2003 WL 22480055, at *4 (S.D.N.Y. Oct. 31, 2003).

### D. Leave to Replead

Plaintiff requests leave to replead any claim that the Court dismisses. Pl. Mem. at 8 n.4. Fed. R. Civ. P. 15(a)(2) requires that leave to amend be freely given "when justice so requires." Yet leave to amend "need not be granted when the proposed amendment would be futile," *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 183 (2d. Cir. 2014), and "[a] plaintiff need not be given leave to amend if it fails to specify . . . how amendment would cure the pleading deficiencies in its complaint," *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014). Here Plaintiff has provided no explanation regarding additional allegations it could provide that would lead to a different result on the outcome of the dismissed claims. *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (dismissal appropriate absent indication that plaintiff could provide additional allegations that would allow the claim to survive). Accordingly leave to replead the dismissed claims is denied.

17

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is denied with respect to the breach of contract, fraud, fraudulent inducement, and tortious interference with contract claims. Defendants' motion to dismiss Plaintiff's claims for misappropriation of confidential information and trade secrets, unjust enrichment, and constructive trust is granted. The Clerk is directed to terminate the motion at Docket Number 18. The parties are directed to file a civil case management plan by June 30, 2015.

Dated: New York, New York
      June 5, 2015

SO ORDERED

_Paul A. Crotty_

PAUL A. CROTTY
United States District Judge

18